# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 21-5158**

**September Term, 2022**

FILED ON: SEPTEMBER 23, 2022

THOMAS C. HAMMETT,
  APPELLANT

v.

JANET L. YELLEN, SECRETARY, US DEPT OF THE TREASURY, OFFICE OF DC PENSIONS,
  APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-00481)

---

Before: PILLARD and WALKER, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs of the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the following reasons, it is

**ORDERED AND ADJUDGED** that the judgment of the district court be **AFFIRMED.**

Thomas Hammett, a retired police officer, challenges a prospective reduction in his retirement benefits by the Office of D.C. Pensions (D.C. Pensions) under the District of Columbia Police Officers and Firefighters' Retirement Plan (the Retirement Plan).

Police officers who retire from the District of Columbia's Metropolitan Police Department (MPD) receive monthly benefits under the Retirement Plan. *See generally* D.C. Code § 5-701 *et seq.* Since 1997, the Secretary of the Treasury has been responsible for funding and administering the Retirement Plan. *See* District of Columbia Retirement Protection Act of 1997, Pub. L. No. 105-33, 111 Stat. 715 (codified as amended at D.C. Code § 1-801.01 *et seq.*); *see also* D.C. Code §§ 1-

801.02(16), 1-803.01, 1-807.05. Under the 1997 version of the Retirement Plan, which governs here, retired police officers receive pension credit for "[c]reditable service," which includes their service with the MPD. *See* D.C. Code § 4-610 (1997). Officers also "shall be allowed credit" for "periods of military service" and "government service performed prior to appointment" to the MPD, subject to certain statutorily enumerated conditions. *Id.* § 4-610 (b)(1), (e)(1).

Hammett disputes D.C. Pensions' decision to reduce his monthly retirement benefit based on its determination that the D.C. Retirement Board had incorrectly calculated it from the outset.

Hammett was first appointed as a civilian police cadet with the MPD in 1965. Before he completed his first year on the job, Hammett was drafted into the U.S. Army and placed on unpaid military furlough from his police cadet position from December 1965 until December 1967. After his discharge from the Army, Hammett returned to the MPD, was promoted from cadet to officer, and served with the MPD until his retirement. When Hammett's retirement benefits were originally calculated in 1994, he was credited twice for his time in the U.S. Army: once as prior "government service" with the police department as a civilian cadet, from which he was on unpaid furlough during his time in the military, D.C. Code § 4-610(e)(1) (1997), and again as "military service" during that same period, *id.* § 4-610(b)(1). In 2015, however, D.C. Pensions determined that Hammett's benefits had been miscalculated because the Retirement Plan does not permit double counting the same period of service. D.C. Pensions prospectively reduced Hammett's monthly retirement benefit by $317. D.C. Pensions also initially claimed entitlement to recover the past overpayment amount of $60,402, but has since waived collection and insists only on the prospective correction.

Hammett challenges the district court's grant of summary judgment to D.C. Pensions on four main grounds: (1) that D.C. Pensions did not have the legal authority to reduce his benefits, (2) that he is statutorily entitled under the Retirement Plan to two separate credits for his service in the U.S. Army, such that he would receive one "military service" credit and another credit for prior "government service," (3) that D.C. Pensions' benefit adjustment violated the Selective Service Act, and (4) that D.C. Pensions should have accorded a "presumption of regularity" to his original benefit calculation. We have jurisdiction under D.C. Code § 1-815.02(b) and our review of the district court's grant of summary judgment is *de novo. See New LifeCare Hosps. of N.C., LLC v. Becerra*, 7 F.4th 1215, 1222 (D.C. Cir. 2021). None of Hammett's arguments holds merit.

*First*, D.C. Pensions has legal authority to determine Hammett's benefit amount, including the ability to correct errors in benefit calculations. Since 1997, the Secretary of Treasury has been responsible for funding and administering the Retirement Plan. *See* District of Columbia Retirement Protection Act of 1997, Pub. L. No. 105-33, 111 Stat. 715 (codified as amended at D.C. Code § 1-801.01 *et seq.*); *see also* D.C. Code §§ 1-801.02(16), 1-803.01, 1-807.05. The

2

Secretary of the Treasury has delegated her authority for administering the Retirement Plan to D.C. Pensions. D.C. Pensions Br. 30-31; *see also* U.S. DEP'T OF TREASURY, TREASURY DIRECTIVE 13-20 (reaffirmed Oct. 16, 2019), https://perma.cc/Z2PA-26TU. In administering the Retirement Plan, the Secretary has broad authority to "determine whether an individual is eligible to receive a Federal benefit payment" and to "determine the amount and form" of those payments. D.C. Code § 1-805.01(1)-(2). D.C. Pensions exercised that authority in adjusting Hammett's benefit to correct an error in the original calculation.

*Second*, D.C. Pensions reasonably interpreted the Retirement Plan to preclude double counting the same period of military service. The statute itself specifies that we owe "great deference" to D.C. Pensions' statutory interpretation. *Id.* § 1-805.02(b). We see nothing unreasonable in the interpretation challenged here. The statute plainly assumes that retirement benefits reflect the length of a retiree's service: "The total service of a member shall be the full years and 12th parts thereof." D.C. Code § 4-610(g) (1997).

No provision affirmatively guarantees retirees two credits for any one period of service. Rather, the "military service" and "government service" provisions are worded differently, reflecting a one-credit-per-period approach. The statute gives members credit "for government service" prior to joining the MPD but—tacitly recognizing that governmental employers often grant leave for military service—the statute credits only "periods of" military service. D.C. Code § 4-610(b)(1), (e)(1) (1997). The text thus calls for credit for government service as such, but accepts any type of credit covering the period spanning the retiree's military service, even if the credit is not denominated as "for" military service.

The Retirement Plan manifests the same one-credit-for-one-period approach in additional ways. For instance, members cannot receive retirement benefits from both the MPD and a military pension plan for the same period of military service, *id.* § 4-610(b)(1), or from the MPD for prior government service unless they withdraw any prior contributions to a government retirement plan and deposit them into the Police Officers and Firefighters' Retirement Plan, *id.* § 4-610(e)(1).

D.C. Pensions' own guidance is not to the contrary. Hammett points to the Summary Plan Description, an agency guidance document, which explains that if a retiree receives credit for prior civilian government service that includes a period when the individual was on active military service covered by leave *with* pay from the civilian job, then he or she will not receive a separate military service credit. Summary Plan Description 2012 (J.A. 17). In Hammett's view, the Summary Plan Description thus impliedly allows—because it does not explicitly prohibit—a double credit for retirees like him who, during their active military service, were placed on military leave *without* pay from their civilian job. The Summary Plan Description, however, does not purport to be an exhaustive restatement of the Retirement Plan itself. It does not address how D.C.

3

Pensions awards credit for a period of military service during unpaid leave from a civilian position. At most, the example in the Summary Plan Description—noting that additional military service credit is barred for retirees who were covered by military leave with pay from a civilian position (and thus receive a prior government service credit)—reinforces the Retirement Plan's general disfavor of double credits for the same period of service.

Hammett also contends that D.C. Pensions' reading of the Retirement Plan renders the "military service" credit provision superfluous because the Selective Service Act already guarantees the preservation of civilian employment benefits for veterans like Hammett. D.C. Pensions' reading does, however, give effect to the "military service" provision. As the district court noted, by including provisions for both prior government and military service, Congress ensured that officers who previously worked for the government from time A to B and then served in the military from time C to D—or for that matter, who never worked in a civilian government position—still get credit for their military service. Transcript of Status Conference at 32-33, *Hammett v. Yellen*, No. 17-cv-481 (D.D.C. May 14, 2021), ECF No. 33 (opinion delivered from the bench).

*Third*, D.C. Pensions' benefit adjustment does not amount to discrimination against veterans or otherwise violate the Selective Service Act.[1] As the district court noted, there is no evidence in the record that D.C. Pensions engaged in discrimination against veterans or penalized Hammett for his military service. Transcript of Status Conference at 35-36. The Selective Service Act requires only that individuals who leave other employment to serve in the military will be restored to their prior positions at the conclusion of their military service without any loss of the seniority they would have accrued. *See* 38 U.S.C. § 4316. As the Supreme Court explained in *Alabama Power Co. v. Davis*, 431 U.S. 581 (1977), a veteran "step[s] back on the seniority escalator . . . at the precise point he would have occupied had he kept his position continuously during the war." *Id.* at 584 (citation omitted). Put otherwise, for civilian seniority purposes, the Selective Service Act treats a period of military service as if it were unbroken civilian employment, *id.* at 585 n.8, but it does not confer a right to additional benefits beyond such assured continuity. Hammett was given similarly seamless pension-accrual treatment: He returned to the MPD with the same amount of pension credit he would have accrued had he remained a cadet and never left for the Army.

---

[1] Hammett alleges a violation of the Military Selective Service Act of 1967. Congress has since enacted the Uniformed Services Employment and Reemployment Rights Act (USERRA), which retains the Selective Service Act's relevant protections regarding veterans' reemployment. *See* Pub L. No. 103-353, 108 Stat. 3149 (codified as amended at 38 U.S.C. § 4301 *et seq.*); *see, e.g.*, 38 U.S.C. § 4316. In enacting USERRA, Congress emphasized that USERRA's predecessor statutes had been successful, and that the "large body" of pre-USERRA caselaw "remained in full force and effect, to the extent it is consistent with USERRA." 20 C.F.R. § 1002.2. We here refer to the Selective Service Act—as the parties and district court have done—rather than USERRA.

*Fourth*, the district court correctly concluded that the "presumption of regularity" did not apply. The presumption generally applies where, for instance, the parties question the accuracy of the government's records, or contend that the government made a technical error in its calculation. *See, e.g.*, *Riggs Nat'l Corp. & Subsidiaries v. Comm'r Internal Revenue*, 295 F.3d 16, 20-22 (D.C. Cir. 2002). The presumption does not insulate an initial governmental determination against an agency's later conclusion that the statute, correctly understood, requires a different determination.

For those reasons we affirm the district court's grant of summary judgment for D.C. Pensions.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk